Bergen v. Porpoise Fishing Co.

---

CHRISTOPHER A. BERGEN, trustee, appellant,

*v.*

THE PORPOISE FISHING COMPANY, JONAS S. MILLER and JOHN A. COOK, respondents.

A defectively organized corporation issued bonds, secured by a mortgage of its property, to pay its debts and meet its current expenses, and the proceeds were so applied. On foreclosure thereof by the trustee for the bondholders— *Held*, (1) that such transaction was not analogous to an assignment for the benefit of creditors, nor did it create any illegal preference of creditors; (2) that the insolvency of the company, if a fact, at the time of issuing the bonds, did not invalidate the mortgage or the rights of the bondholders thereunder ; (3) that many of the bondholders were also stockholders, and, as such, liable to be assessed for unpaid subscriptions on their stock to pay the company's debts, was a question to be litigated directly between them and the company, and not to be tried, in their absence, in this case, to impair their rights as such bondholders; (4) that the answer did not set out specifically the fraud upon which the defendant relied, and was granted relief below, and therefore such decree must be reversed.

---

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is reported in *Bergen* v. *Porpoise Fishing Company*, 14 Stew. Eq. 238.

*Mr. Samuel D. Bergen*, for appellant.

*Mr. John W. Wescott*, for respondents Miller and Cook.

The opinion of the court was delivered by

KNAPP, J.

The bill was filed by complainant, as trustee, under two mortgages made by the Porpoise Fishing Company, on the 1st of October, 1884, to secure sixty bonds of $50 each, also executed by the company. The mortgages so given covered lands and chattels of the company. The bill prayed foreclosure of the mortgage and sale of the mortgaged premises, and a decree against Jonas S. Miller and John A. Cook for the return of certain of the mortgaged chattels purchased by them at a sale had of such property, in virtue of two judgments recovered against the company by said Miller and Cook, respectively. The judgments so recovered were subsequent to the execution of the mortgage. The bill also prayed the appointment of a receiver.

The defendants Cook and Miller answered, setting up their several judgments, averring the validity of the sale and purchase by them thereunder, and denied authority in the corporation to make the mortgages, and averred generally that they were made in fraud of creditors.

The decree held the mortgages invalid as against the judgments of the defendants, and the title to the property of the company acquired by them thereunder.

The fishing company, in February, 1884, filed a certificate of incorporation under the general law. A president and other officers of the corporation were chosen, but not in the mode required by the statute. For above half a year it transacted business through these officers, acquired property and incurred debts. On the 15th of September, 1884, it perfected its corporate organization. On that day, by the assent of all the stockholders present at a meeting called for that purpose, a resolution of the board of directors was passed, authorizing the issue of sixty bonds by the company, of $50 each, and the execution of a mortgage upon its real estate and a mortgage upon its chattels to secure the payment of the bonds, with interest. The securities were issued on the 1st of October following. The bonds were disposed of at par, and principally to the stockholders of the

Bergen v. Porpoise Fishing Co.

company. A large portion of them was for cash paid to the company on the delivery of the bonds; others were paid to officers and stockholders for money which had already been advanced by them to the company. In a few instances they were used to pay bills due from the company for goods delivered to it, for salaries due to officers, and for moneys which they had advanced to the company, for which they held claims against it.

The defendants Miller and Cook each, in June, 1885, recovered a judgment against the corporation for debts contracted prior to the execution and recording of the mortgages.

Some or all of the stockholders were subject to calls on their stock at the time of the execution of the mortgages and their purchase of bonds.

Under these circumstances, the court below decreed the rights of the judgment creditors to be superior to the lien of these mortgages, principally upon the ground, as I understand the opinion of the learned vice-chancellor, that the transaction was virtually an assignment for the benefit of creditors in which unlawful preferences were given; or that the execution of these mortgages was intended to delay and hinder creditors. He regards the circumstances under which the property of the corporation was pledged as establishing a fraud in law against creditors. One circumstance made prominent in the opinion below is the insolvency of the corporation at the time when the mortgages were made.

It is not amiss to say, in respect to this fact, that it is, as I think, made to appear that when the mortgages were executed and delivered, the assets of the company were in excess of its liabilities, and that with the aid which the money procured from the sale of those bonds afforded it, it could and did continue to pay its current obligations as they arose. But conceding the fact of insolvency, is this a ground for invalidating a security thus made for moneys advanced upon it, or for debts in good faith due to the takers of the bonds?

The case of *Wilkinson* v. *Bauerle, 14 Stew. Eq. 635*, holds that under our law, as it has stood since the revision, corporations stand with individuals in respect to the right to·pledge

their property; so that the objection that an insolvent corporation is incapacitated, by express statute, to mortgage its property cannot now be made. And the law is not that a debtor, though insolvent, may not sell or pledge his property for money or in the payment of his debts, or prefer a creditor or creditors over others. "Both reason and authority," says Judge Magie, " establish the proposition that a corporation may sell and transfer its property, and may prefer its creditors, although it is insolvent, unless such conduct is prohibited by law. *National Bank of the Metropolis* v. *Sprague, 6 C. E. Gr. 530 ; Wilkinson* v. *Bauerle, supra ; 1 Smith's Lead. Cas. (7th Am. ed.) 45*.

Stress is also laid upon the circumstance that many of the persons who took and paid for the bonds on delivery to them were stockholders of the company, and as such were liable to calls upon non-paid-up stock.

Whether such be the fact or not, we are not permitted to determine against these parties who, as stockholders, are strangers to this suit. That is a matter between them and the corporation or its creditors, and one upon which they are entitled to be heard before their liability is adjudged. If we admit it, still the circumstance seems wanting in material significance in this case. If they owed money upon the subscriptions to stock, they were still at liberty to buy and pay for the company's bonds, and either hold them or pass them upon the market. If stockholders are liable for calls or assessments, the right of creditors to proceed under the statute against all such stockholders, and for the benefit of all creditors, suggests the mode of redress to be pursued. To hold these securities invalid to any extent because the purchasers were debtors to the company on this account, takes from them their purchased security, and leaves them liable for their debts, when they shall be called upon to pay them. Stockholders in the company are liable to be called on in the interest of creditors to pay into the treasury of the company money due and unpaid upon the stock held by them to the full amount, if necessary to meet the demands of creditors. But it is a fund alike for the benefit of all creditors and opportunity must be given them to share in the fund. *Morgan* v. *N.*

*Y. & A. Railroad Co., 10 Paige 290; Wetherbee v. Baker, 8 Stew. Eq. 501.*

In this proceeding the stockholder's liability is not to be considered. But this transaction is held to be in close similarity with a class of cases of which *Owen* v. *Arvis, 2 Dutch. 22,* and *National Bank of the Metropolis* v. *Sprague, supra,* are examples, and therefore governed by the principles there applied. But I fail to see that the facts of this case bear any resemblance to those features in the cases cited, which shaped the judgments that were pronounced. This transaction, neither in form nor substance, was an assignment for the benefit of creditors. It had nothing in it that could properly be called a preference of creditors. The trust created was not for creditors, but was for the security of those who should advance them money to the company in purchase of its bonds. Neither does this case, in my judgment, present the other aspect, apparent in the cases cited, which led to the avoidance of the schemes then under consideration, because of the provisions of the twelfth section of the statute of frauds and perjuries, which declares void, as against creditors whose claims shall be delayed or defeated, " conveyances or grants of lands or chattels, contrived in fraud, covin or collusion, with intent to hinder, delay or defraud creditors of their lawful claims."

The unlawful intent may be inferred from circumstances attending the questioned transaction. But when those circumstances are consistent with an honest intent they do not prove the fraud.

From the proofs taken on the hearing no inference of such illegal design can fairly be deduced.

The company just entering upon its chosen business had expended its funds closely in the employment of men and purchasing materials in preparation for its main pursuit in which its officers evidently hoped for profitable returns. It had contracted debts in this course of business and needed funds to meet demands of present creditors, as well as obligations to be incurred in continuing work. In this situation nothing was more natural or in the common course than to pledge its property to supply

ready money to its treasury. This it did by the sale of bonds at par for cash or its equivalent. That the purchasers of the bonds were, in the main, persons from among its stockholders, presents no reasonable ground to impugn the good faith of the transaction. Doubtless, every conveyance or mortgage of a debtor's property may in some degree hinder or delay creditors, but it is the unlawful design to accomplish this end in the transfer of property, which is within the interdict of the statute. *Atwood* v. *Impson*, *5 C. E. Gr. 150.*

If the circumstances which attended the creation of these mortgages should be held sufficient to postpone their lien as a security to the claims of prior creditors at large, it is not apparent how any mortgage given to raise money or secure a debt by one then owing other debts, would escape impairment and defeat to the extent of the unsecured claims.

A rule of priority based on such a collocation of facts must always assign a position of advantage to the general creditor over the subsequent mortgagee, and no one could safely take a mortgage on lands or goods until he had first ascertained to a certainty that the mortgagor at the time was free from debt.

The pleadings in this case do not present the issue that the court has passed upon. It is true that in the answer there is an allegation of fraud, but it is in the most general terms and suggests nothing of the ground on which the case turned. A general charge of fraud is not sufficient. The party who seeks redress on this ground must point out and specify the fraud. *Small* v. *Boudinot*, *1 Stock. 381; Dan. Ch. Pl. & Pr. 324.*

In *Other* v. *Smurthwaite*, *L. R.* (*5 Eq.*) *437,* Vice-Chancellor Wood says: "If there be any one thing more contrary to the course of our proceeding in equity than another, it is the taking an opponent by surprise. * * * Nothing is more settled than the doctrine that when you charge fraud you must state the facts upon which you allege fraud and prove them strictly." In *Bank of Metropolis* v. *Sprague*, Justice Van Syckel uses this language: "A person claiming to set aside the vicious conveyance must establish his position as one of those in whose aid the statute is framed. That he occupies such position

Heyder v. Excelsior Building Loan Association.

the parties adverse to him in interest may contest, and the only way in which the issue can be framed and this matter brought to the consideration of the court, is by the pleadings. * * * The affirmative is upon the creditor, and it is incumbent upon him to place himself upon the record, so that his opponent can be heard when his case is adjudicated." And, citing from *2 Dan. Ch.*: "It is a fundamental maxim that no proof can be admitted of any matter which is not noticed in the pleadings. This rule applies as well to answers as to bills, and a defendant cannot avail himself of any matter in his defence which is not stated in his answer, although it should appear in evidence."

The answer fails to properly present the defences which were successful to the defendant in the court below.

For these reasons the decree should be reversed, and a decree entered establishing the mortgages so far as they secure money due upon the bonds to holders for value as liens, prior to the judgments of the defendants. The record should be remitted to the court of chancery that the cause may be proceeded in there.

*Decree unanimously reversed.*